528 So.2d 1279 (1988)
Albert "Buddy" CROFT, Appellant,
v.
STATE of Florida, Appellee.
No. 87-382.
District Court of Appeal of Florida, First District.
July 27, 1988.
*1280 Clifford L. Davis, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Helen P. Nelson, Asst. Atty. Gen., Tallahassee, for appellee.
ERVIN, Judge.
Croft appeals his convictions of burglary of a dwelling with intent to commit false imprisonment, and assault while in the course of a burglary, contending that as to the former, the circumstantial evidence relied upon by the state to convict him in his status as an aider and abettor of another in the commission of the crime failed to exclude appellant's reasonable hypothesis of innocence, and, as to the latter offense, the evidence failed to show a well-founded fear by the persons alleged to be assaulted that violence was imminent. We reverse the first conviction and affirm the second.
Appellant and his companion Eddie Kornegay, after consuming numerous quantities of beer during the day, drove to the home of Kornegay's estranged girlfriend's current boyfriend, where Kornegay made a forcible entry and, while inside the house, was shot dead by the boyfriend's father, James Burch. Following the shooting, appellant also entered the house without consent, and, when blocked admittance into the room where the body of his deceased friend lay, threatened the residents that he would return to his truck and get something from it that would kill "whatever one of you S.O.B.s." Later appellant reentered the home, again without consent, and repeated his intention to kill the family members if his friend died. Appellant was at no time armed when he made the threats.
*1281 In advancing its theory that appellant aided and abetted his companion in the burglary of a dwelling for the purpose of falsely imprisoning Kornegay's former girlfriend, the state relies primarily upon a statement made by appellant in the truck parked outside the house to Kornegay, overheard by James Burch and two others just before Kornegay's forced entry into the house, saying: "Goddamn, Eddie, we have to do what we have got to do." The state argues that this comment clearly discloses beyond a reasonable doubt that appellant encouraged Kornegay to break into the dwelling in order to carry out the intention to abduct Kornegay's former girlfriend. We cannot agree.
Before a person may be convicted as a principal in the first degree under the theory of aiding and abetting another in the commission of a crime pursuant to Section 777.011, Florida Statutes, "it is necessary that he [the person charged as a principal] not only have a conscious intent that the criminal act be done, but further requires that pursuant to that intent he do some act or say some word which was intended to and which did incite, cause, encourage, assist or induce another person to actually commit the crime." G.C. v. State, 407 So.2d 639, 640 (Fla. 3d DCA 1981). Stated otherwise, the state must show not only that the accused assisted the perpetrator in the commission of the offense, but that he or she also intended to participate in the crime. Horton v. State, 442 So.2d 1064 (Fla. 1st DCA 1983). When as here the evidence of a defendant's aiding and abetting rests solely on circumstantial evidence, the proof, as in any other case involving circumstantial evidence, must not only be consistent with guilt but inconsistent with any reasonable hypothesis of innocence. See Horton, 442 So.2d at 1066.
The only evidence that the state can point to as supporting an intent by Croft as aiding and abetting Kornegay in burglarizing the dwelling for the purpose of committing false imprisonment is the inference arising from appellant's statement to Kornegay encouraging the latter to so act shortly before his forcible entry into the home. This statement, at best, is ambiguous and does not exclude an equally plausible inference, as contended by appellant, that he was in fact attempting to dissuade his friend from pursuing his foolhardy course. Two of the witnesses who overheard appellant's remark also testified that they heard appellant and Kornegay arguing in the truck outside the residence. As such, the state's hypothesis of guilt cannot serve to dispel the appellant's reasonable explanation that his declaration to Kornegay had in fact the opposite goal as that contended by the state. Appellant's explanation is clearly consistent with a reasonable hypothesis of innocence, and, "[i]n applying the [circumstantial evidence] standard, the version of events related by the defense must be believed if the circumstances do not show that version to be false." McArthur v. State, 351 So.2d 972, 976 (Fla. 1977). Accordingly, we agree that the trial court erred in denying appellant's motion for judgment of acquittal, and reverse his conviction of burglary of a dwelling with intent to commit false imprisonment.
Appellant also argues that the evidence is legally insufficient to convict him of burglary with the intent to commit assault. He argues  although the evidence clearly discloses that he forcibly entered the Burches' home twice and while there threatened to kill both the family members and a police officer called to the scene  that the evidence submitted by the state for the purpose of proving the requisite specific intent to commit an assault was not sufficient, because such evidence requires "the doing of some act which creates a well-founded fear in some other person that such violence is imminent," Section 784.011, Florida Statutes, and that there could be no well-founded fear under the circumstances because appellant was unarmed at all times during his entry in the *1282 home, whereas both Mr. Burch and a law enforcement officer called to the scene were armed. We disagree. The rule has long been recognized that a threatening weapon need not be seen by an assaulted victim in order to create a well-founded fear of violence. See Kindell v. State, 413 So.2d 1283 (Fla. 3d DCA 1982).
When appellant made his first unconsented entry into the house, he not only threatened to kill the members of the Burch family, but indicated that he intended to accomplish his threats by getting something from the truck parked outside the house. He left the house and shortly afterward reentered it. The victims could with reason assume that when appellant returned, he had brought with him a weapon that would assist him in carrying out his threats. Although in fact he had no weapon on his person, a gun was later found within the vehicle which he had occupied. Moreover, the victims' reasonable apprehension of violence was reinforced by evidence disclosing that appellant conducted himself in a violent and uncontrollable manner by making a personal attack on an armed law enforcement officer.
AFFIRMED in part, REVERSED in part.
BOOTH and WENTWORTH, JJ., concur.