70 So.3d 754 (2011)
A.S.F., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 4D10-1873.
District Court of Appeal of Florida, Fourth District.
October 5, 2011.
*755 Philip J. Massa, Regional Counsel, and Louis G. Carres, Special Assistant Conflict Counsel, Office of Criminal Conflict and Civil Regional Counsel, West Palm Beach, for appellant.
Pamela Jo Bondi, Attorney General, Tallahassee, and Melanie Dale Surber, Assistant Attorney General, West Palm Beach, for appellee.
POLEN, J.
Juvenile appellant, A.S.F., appeals the judgment of conviction and sentence of the trial court. A.S.F. was found guilty of aggravated battery and strong arm robbery, was adjudicated delinquent, and was placed in a high-risk residential facility. A.S.F. moved for judgment of dismissal because he was not definitively identified so as to warrant a conviction. We hold that the State failed to meet its burden of showing proof beyond a reasonable doubt that A.S.F. was guilty and reverse the denial of A.S.F.'s judgment of dismissal.
Victim, Rubin Roblero Santico ("Santico"), testified that on the date of the incident he was living at home with his mother and siblings. Santico left his home to go over to the next street to pick up money being loaned to his mother. On his way home, Santico stopped at the store to purchase beer. While at the store, he ran into his friend and two other boys he knew from school, all of whom joined him back at his home to drink the beer. At Santico's home, the group sat and drank beer in the backyard. Within an hour, Santico's friend left while the two individuals, one of whom was A.S.F., remained at the house. An older male, unknown to Santico but friendly with the other two, arrived at the home. Santico sat in front of A.S.F. and talked to him while the other younger male was to Santico's left. Santico did not recall any hostile conversations and simply remembered discussing school with the two younger males. While Santico was *756 still talking to A.S.F., the other younger male and the older male were speaking in a foreign language, believed to be Guatemalan. As Santico continued speaking to A.S.F., he was grabbed by the neck from behind and hit on the head. At that time, Santico's wallet, phone, and a gold chain were taken from him. Santico realized there was blood coming from his head. He felt a knife in that spot, removed it, put the knife in his pocket, and fainted.
Santico's mother, Celia Santico Perez ("Perez"), was in the front of the house playing with her daughters while her son and the other boys were in the backyard. Her youngest child came to her and told her Santico had been hit. At that point, Perez saw two of the males jumping the backyard fence while the third ran through the front of the house. Perez identified A.S.F. as the one who ran out the front door. Perez did not see who attacked her son, but she blamed the two males who were at her home earlier because they had opened the gate to allow the older male inside.
Officer Knodle arrived on the scene and found Santico sitting at a table, holding his profusely bleeding head. The stab wound was at the top of the left side of Santico's head and the assault weapon was in one of his pockets. Officer Flynn, a detective who went to the Santico-Perez home with Officer Knodle, was given A.S.F.'s and his co-defendant's addresses. Flynn went to A.S.F.'s home and spoke with him. During that conversation, A.S.F. told Flynn that he was at Santico's home drinking, but had left before anyone else because he was tired. He further stated that he was unaware that anything had happened. Upon making contact with the co-defendant, Flynn was advised that an unknown male showed up and got into an argument with A.S.F. At that time, the co-defendant alleged that Santico went inside and got knives, brought them outside, and told the co-defendant not to get involved in the fight between the other two. He stated that once the argument was over, everybody left Santico alone and unharmed in his backyard.
A.S.F. was arrested and charged by juvenile affidavit, along with his co-defendant, with aggravated battery and strong arm robbery. A.S.F. moved for judgment of dismissal because the varying facts resulted in no definitive identification to warrant a conviction. The court denied the motion for dismissal and both defendants were found guilty by the trial court because it found the case was proven circumstantially, satisfactorily. The court adjudicated A.S.F. delinquent based on the offenses and placed him in a high risk residential facility with conditional release. A special public defender fee of $300 was orally pronounced at trial, but the written order provided the fee was $400 instead. A.S.F. appealed the denial of his motion for dismissal and the inconsistent order of fees by the court.
"The standard of review for judgment of dismissal is the same standard we apply to review a judgment of acquittal. The denial of a motion for judgment of acquittal is reviewed de novo." R.H. v. State, 56 So.3d 156, 157 (Fla. 4th DCA 2011) (citing J.P. v. State, 855 So.2d 1262, 1264 n. 1 (Fla. 4th DCA 2003)). The court views the evidence in a light most favorable to the State, but if the evidence does not support a conviction, the motion is granted. Id. If the State is able to prove that each element of the crime existed, the motion is denied. Id.
Here, A.S.F. contended that the facts of the case failed to provide inferences that he was an involved or knowing participant of the crime.

*757 To secure a conviction on an aider and abettor theory, the state must establish (1) that the defendant helped the person who actually committed the crime by doing or saying something that caused, encouraged, incited or otherwise assisted that person to commit the crime; and (2) that the defendant intended to participate in the crime.
Wyatt v. State, 755 So.2d 671, 673 (Fla. 4th DCA 1999). To convict someone as a principal, "the defendant must have intended that the crimes be committed and have done some act to assist another in committing the crimes." Garcia v. State, 899 So.2d 447, 449 (Fla. 4th DCA 2005). To prove these elements, circumstantial evidence may be presented, but that evidence must satisfy the requisite standard of proof addressed above. See T.S. v. State, 675 So.2d 196, 198 (Fla. 4th DCA 1996).
The First District Court of Appeal supports the position that, even if A.S.F. had knowledge that an attack was imminent, it does not render him guilty of aiding and abetting. C.P.P. v. State, 479 So.2d 858, 859 (Fla. 1st DCA 1985). In C.P.P., the court provided that merely knowing an offense is being committed is not equal to participating in the crime "with the requisite criminal intent." Id. Furthermore, being present at a scene and fleeing from the scene when an offense is committed also does not sufficiently establish participation. Id. (citing J.W. v. State, 467 So.2d 796, 797 (Fla. 3d DCA 1985)). Without additional evidence to eliminate the hypothesis of innocence, the trial court's conviction must be reversed. See id.
The undisputed facts of this case show that A.S.F. was present in Santico's backyard and drinking beer with Santico and two other males at the time Santico was attacked. Santico could not say who attacked him. Perez witnessed A.S.F. run out the front of the house while the other two escaped over the backyard fence. In its brief, the State concluded that A.S.F. must be involved because Perez found her son's wallet on the other side of the fence after the attack. However, the transcripts from the hearing in this case contrarily provided that the co-defendant and the older male were the only ones who jumped over the fence while A.S.F. ran through the front door.
The state presented no evidence that A.S.F. had any participation in the attack and merely showed that he might have, at some point, been aware that an attack was going to occur. Absent from the evidence is any proof that A.S.F. and his co-defendant might have realized the older male's intentions, but, in accordance with the First District's ruling in C.P.P., that realization or mere knowledge would not even be enough to establish the requisite criminal intent.
Because the State failed to meet its burden of showing that the evidence was inconsistent with A.S.F.'s reasonable hypothesis of innocence, that he was merely present and did not participate in the crime, we reverse the denial of A.S.F.'s motion for judgment of dismissal. Since the charges will be dismissed, no special public defender fee may be imposed on remand.
Reversed and Remanded.
WARNER, J., and EHRLICH, MERRILEE, Associate Judge, concur.